UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term 2019

Argued: March 12, 2020
Originally Decided: September 8, 2021
Reversed and Remanded: May 11, 2023, May 22, 2023
Decided: September 23, 2024

Docket Nos. 18-2990-cr (L)*, 18-3710-cr, 18-3712-cr, 18-3715-cr, 18-3850-cr

---

UNITED STATES OF AMERICA,
*Appellee,*

*- against -*

STEVEN AIELLO, JOSEPH GERARDI, LOUIS CIMINELLI,
ALAIN KALOYEROS, AKA DR. K.,
*Defendants-Appellants,*

JOSEPH PERCOCO, PETER GALBRAITH KELLY, JR., MICHAEL LAIPPLE,
KEVIN SCHULER,
*Defendants.*

---

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES,

NOS. 21-1161, 21-1169, 21-1170

---

* Nos. 18-2990 (L) and 19-1272 (Con) were determined by opinion filed September 5, 2023. *See United States v. Percoco*, 80 F.4th 393 (2d Cir. 2023) (per curiam). This opinion determines the remaining appeals.

Before:

RAGGI, CHIN, and SULLIVAN, *Circuit Judges*.

---

Defendants-appellants Steven Aiello, Joseph Gerardi, Louis Ciminelli, and Alain Kaloyeros appeal from judgments of the United States District Court for the Southern District of New York (Caproni, *J.*) convicting them of wire fraud and wire fraud conspiracy. Aiello also appeals his conspiracy to commit honest-services wire fraud conviction, and Gerardi also appeals his false statement conviction. After we affirmed the judgments of the district court, Aiello, Gerardi, Ciminelli, and Kaloyeros petitioned the Supreme Court for review. After granting certiorari and issuing opinions in this case and the related case, *see Ciminelli v. United States*, 598 U.S. 306 (2023), and *Percoco v. United States*, 598 U.S. 319 (2023), the Supreme Court remanded for further proceedings. In light of those opinions, we vacate the convictions for wire fraud and wire fraud conspiracy, we vacate Aiello's conviction for conspiracy to commit honest-services wire fraud, we affirm Gerardi's false statement conviction, and we remand for further proceedings.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED IN PART.

---

Alexandra A.E. Shapiro, Daniel J. O'Neill, Fabien M. Thayamballi, Shapiro Arato Bach LLP, New York, NY, *for Defendants-Appellants Steven Aiello and Joseph Gerardi.*

Timothy W. Hoover, Spencer L. Durland, Hoover & Durland LLP, Buffalo, NY; Herbert L. Greenman, Lipsitz Green Scime Cambria LLP, Buffalo, NY, *for Defendant-Appellant Louis Ciminelli.*

Michael C. Miller, Reid H. Weingarten, Michael G. Scavelli, Bruce C. Bishop, Steptoe & Johnson LLP, New York, NY and Washington, D.C., *for Defendant-Appellant Alain Kaloyeros.*

Matthew D. Podolsky, Derek Wikstrom, Won S. Shin, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for the United States.*

_____

CHIN, *Circuit Judge*:

In 2018, a jury found defendants-appellants Steven Aiello, Joseph Gerardi, Louis Ciminelli, and Alain Kaloyeros (collectively, the "Appellants") guilty of wire fraud and wire-fraud conspiracy in connection with a New York State initiative to use taxpayer dollars to develop the greater Buffalo region. The government obtained those convictions by proceeding on a right-to-control theory of wire fraud, which under this Court's longstanding precedents

permitted conviction based on the deprivation of valuable information necessary to make economic decisions rather than the deprivation of traditional property interests.  The jury also found Gerardi guilty of making a false statement to federal officers.  In a separate trial also in 2018 stemming from the same indictment, the jury found Aiello guilty of conspiracy to commit honest-services wire fraud based on actions taken by a co-defendant who was, at the time, a private individual rather than a state official.

Appellants appealed from judgments of the United States District Court for the Southern District of New York (Caproni, *J.*) convicting them of the above crimes.  We affirmed.  *See United States v. Percoco*, 13 F.4th 158 (2d Cir. 2021) ("*Percoco I*") (addressing the wire fraud, wire fraud conspiracy, and false statement counts); *United States v. Percoco*, 13 F.4th 180, 184 (2d Cir. 2021) ("*Percoco II*") (addressing the conspiracy to commit honest-services wire fraud count).  Appellants then petitioned the Supreme Court for review.

After granting certiorari, the Supreme Court held, in a pair of opinions, that (1) the right-to-control theory of wire fraud does not support liability under the federal wire fraud statute, and (2) the instructions given to the jury for honest-services wire fraud were erroneous with respect to when a

private person may be convicted under the statute. *See Ciminelli v. United States*, 598 U.S. 306, 311-12 (2023) (addressing wire fraud); *Percoco v. United States*, 598 U.S. 319, 322, 330-31 (2023) (addressing honest-services wire fraud). Accordingly, the Supreme Court remanded the cases for further proceedings. *See Ciminelli*, 598 U.S. at 317 (reversing and remanding with respect to Ciminelli); *Aiello v. United States*, 143 S. Ct. 2491 (2023) (vacating and remanding with respect to Aiello and Gerardi); *Kaloyeros v. United States*, 143 S. Ct. 2490 (2023) (vacating and remanding with respect to Kaloyeros).

For the reasons set forth below, we VACATE Appellants' convictions for wire fraud and wire fraud conspiracy, we VACATE Aiello's conviction for conspiracy to commit honest-services wire fraud, we AFFIRM Gerardi's false statement conviction, and we REMAND for further proceedings.

## BACKGROUND

### I.    *The Facts*

The facts are set forth in detail in our prior opinion in this case and are summarized here as relevant to this appeal. *See Percoco I*, 13 F.4th at 164-68.

### A. *The Bid-Rigging Scheme*

In 2012, then-Governor Andrew Cuomo launched the "Buffalo Billion" initiative, which aimed to develop the greater Buffalo area with a $1 billion investment of taxpayer funds. The evidence at trial established that Aiello, Gerardi, Ciminelli, and Kaloyeros entered into a scheme to secure state-funded construction projects in Buffalo, New York, and Syracuse, New York, for their businesses, COR Development Company (Aiello and Gerardi's company) and LPCiminelli (Ciminelli's company), through the Buffalo Billion initiative.

Also in 2012, after hiring consultant and lobbyist Todd Howe to improve his relationship with the governor's office, Kaloyeros was put in charge of developing project proposals for the Buffalo Billion initiative. Because of his board position at the Fort Schuyler Management Corporation ("Fort Schuyler"), Kaloyeros had a position of influence and control in the selection process for Buffalo Billion development projects. Although the Fort Schuyler board of directors had ultimate authority to award the contracts, Kaloyeros was in charge of designing and drafting the documents for the request-for-proposal ("RFP") process, which he did for one RFP for the Buffalo project (the "Buffalo RFP") and one RFP for the Syracuse project (the "Syracuse RFP").

Unbeknownst to others at Fort Schuyler, Kaloyeros and Howe conspired to deliver the Buffalo Billion contracts to Howe's other clients: Aiello, Gerardi, and Ciminelli. Because Kaloyeros was able to manipulate the bid process, Aiello, Gerardi, and Ciminelli were able to gain an unfair advantage. For example, Kaloyeros incorporated requirements into the RFPs that were tailored to match the qualifications or attributes of their companies, COR Development and LPCiminelli.

In December 2013 and January 2014, Fort Schuyler's board announced that COR Development won the Syracuse RFP and that LPCiminelli and another firm won the Buffalo RFP. Pursuant to those announcements, Kaloyeros awarded two construction projects totaling approximately $105 million to COR Development and another construction project ultimately worth $750 million to LPCiminelli.

**B.**  *Gerardi's Proffer Session*

On June 21, 2016, as the government investigated the rigging of the Buffalo and Syracuse RFPs, it held a proffer session with Gerardi. There, Gerardi told federal officers that "he did not ask for the [Syracuse] RFP to be tailored to COR, nor did he feel as though it was tailored to COR." App. at 1330.

Gerardi also told federal officers that he made handwritten notes on a document titled "Fort Schuyler Management Corporation request for proposal." Gov't App. at 903. A special agent, who was at the proffer session, testified that Gerardi told him that he reviewed the draft RFP as a favor to Howe because he was Howe's friend and an attorney, rather than because of his affiliation with COR Development. Gerardi asserted that he was trying to broaden the RFP to permit more companies to compete. Gerardi also sought to explain specific handwritten comments, like his comment that the inclusion of COR Development's software as a qualification in the Syracuse RFP was "too telegraphed" and his recommendation to "leave out the specific programs." App. at 1328. Gerardi stated that he really meant that the language used was "too telescoped" and would not be broad enough to permit other companies to apply. *Id.*

Gerardi also told federal officers that his request to remove a requirement for audited financials from the Syracuse RFP was not to help COR Development, which did not have audited financials. Instead, he claimed that he made the request to remove a barrier to entry for other private companies, which he asserted typically lacked audited financial statements. And he told officers

that he did not know why Howe emailed Gerardi to confirm that Kaloyeros made an adjustment to the RFP permitting the submission of a reference letter from a financial institution in lieu of audited financials, and that he responded "[g]reat" and "[t]hank you" merely to be polite. *Id.* at 1329.

Gerardi was arrested about three months after his proffer session.

## II.   *Procedural History*

On September 19, 2017, a superseding indictment charged Appellants and others with eighteen counts related to alleged corruption and abuse of power. The district court severed the counts into two trials. The first trial involved the counts alleging bribes taken by Joseph Percoco, a former Cuomo administration official, including bribes to advance COR Development's interests, which was the basis for Aiello's honest-services wire fraud conspiracy count. The second trial -- largely the focus of this appeal -- involved the bid-rigging scheme detailed above. The following counts of the indictment are relevant to this appeal: (1) Count One, charging Kaloyeros, Aiello, Gerardi, Ciminelli, and others with conspiracy to commit wire fraud in connection with a scheme to rig the bidding processes for the Buffalo Billion project, in violation of 18 U.S.C. § 1349, (2) Count Two, charging Kaloyeros, Aiello, and Gerardi with

wire fraud in connection with rigging the bidding process for the projects in

Syracuse, New York, in violation of 18 U.S.C. §§ 1343 and 2, (3) Count Four,

charging Kaloyeros, Ciminelli, and others with wire fraud in connection with

rigging the bidding process for the projects in Buffalo, New York, in violation of

18 U.S.C. §§ 1343 and 2, (4) Count Ten, charging Percoco, Aiello, Gerardi, and

others with conspiracy to commit honest-services wire fraud in connection with

COR Development, in violation of 18 U.S.C. § 1349, and (5) Count Sixteen,

charging Gerardi with making false statements to federal officers in connection

with the conduct charged in Counts One and Two, in violation of 18 U.S.C. §

1001(a)(2).

  The first trial began on January 22, 2018, and covered Count Ten.  At

the close of the government's case, Aiello moved for a judgment of acquittal

under Federal Rule of Criminal Procedure 29 based on insufficient evidence.  The

court reserved decision on the motion.  On March 13, 2018, the jury found Aiello

guilty of conspiracy to commit honest-services wire fraud.[1]  Aiello did not renew

his Rule 29 motion after the jury's verdict, and the court denied the motion after

trial.

---

[1]  The jury also found Percoco guilty on Count Ten but found Gerardi not guilty.

On June 11, 2018, the trial on Counts One, Two, Four, and Sixteen began. To prove the wire fraud and wire fraud conspiracy counts, the government relied solely on the right-to-control theory of wire fraud endorsed by this Court, *see United States v. Finazzo*, 850 F.3d 94, 108 (2d Cir. 2017), arguing that Appellants schemed to deprive Fort Schuyler of potentially valuable economic information that it would have otherwise received in a legitimate and competitive RFP process. Appellants challenged the sufficiency of the government's evidence -- via oral Rule 29 motions -- at the close of the government's case, and the district court reserved decision. Appellants put on a defense case with three witnesses. On July 12, 2018, the jury found Appellants guilty on all counts. Appellants renewed their Rule 29 motions, and the district court denied them.

In four separate hearings in December 2018, the district court sentenced Ciminelli to 28 months' imprisonment, Gerardi to 30 months' imprisonment, Aiello to 36 months' imprisonment, and Kaloyeros to 42 months' imprisonment.

On September 8, 2021, we affirmed the judgments of the district court in two opinions. *See Percoco I*, 13 F.4th at 164; *Percoco II*, 13 F.4th at 184.

Percoco, Aiello, Gerardi, Ciminelli, and Kaloyeros then petitioned the Supreme

Court for review.  The Supreme Court granted certiorari and issued a pair of

opinions.

In *Ciminelli*, the Supreme Court held that this Court's right-to-

control theory is not a valid basis for liability under the federal wire fraud statute

because "the federal fraud statutes criminalize only schemes to deprive people of

traditional property interests," which do not include "potentially valuable

economic information necessary to make discretionary economic decisions

[under the right-to-control theory]."  598 U.S. at 309 (internal quotation marks

omitted).  In *Percoco*, the Supreme Court held that the district court's jury

instructions about honest-services wire fraud were erroneous.  *See* 598 U.S. at

330-31.  It concluded that the instructions -- directing the jury to consider

whether a defendant has a "special relationship" with the government and

"dominated and controlled" government business -- did not supply the proper

test for determining whether a private person may be convicted of honest-

services fraud.  *Id.* at 322 (internal quotation marks omitted).

In light of these two opinions, the Supreme Court remanded

Appellants' cases for further proceedings.  *See Ciminelli*, 598 U.S. at 317 (reversing

and remanding Ciminelli's case); *Aiello*, 143 S. Ct. at 2491 (vacating and

remanding Aiello's and Gerardi's judgments); *Kaloyeros*, 143 S. Ct. at 2490

(vacating and remanding Kaloyeros's judgment).

The parties submitted supplemental briefs.

## DISCUSSION

Appellants first contend that they are entitled to judgments of

acquittal on their wire fraud and wire fraud conspiracy counts because the

government chose to pursue a now-invalid theory of wire fraud at trial and,

alternatively, the evidence is insufficient to sustain their convictions on a

traditional property theory of wire fraud that the government did not pursue at

trial.  The government responds that we should not reach the question of the

sufficiency of the evidence but instead remand for retrial of those counts under a

traditional wire fraud theory.  Second, Aiello and the government jointly ask this

court to vacate Aiello's conviction for conspiracy to commit honest-services wire

fraud in light of *Percoco*, 598 U.S. at 322.  Third, Gerardi seeks vacatur of his false

statement conviction because the evidence is insufficient to sustain it after

*Ciminelli* as a matter of law or, alternatively, because of spillover prejudice from

the wire fraud counts on his false statement count.  We address each issue in

turn.

**I.**     *Appellants' Wire Fraud and Wire Fraud Conspiracy Convictions*

Appellants' first argument presents two issues: first, whether, as a

matter of double jeopardy, they are entitled to judgments of acquittal because the

government relied only on a now-invalid theory of wire fraud at trial and should

not be given "another opportunity to supply evidence which it failed to muster in

the first proceeding," Appellants' Joint Br. on Remand at 17 (quoting *Burks v.*

*United States*, 437 U.S. 1, 11 (1978)), and second, whether, assuming the

government may proceed on a traditional wire fraud theory, this Court should

conduct a sufficiency review of the evidence or simply remand for a retrial

without conducting such review.

**A.**     *Double Jeopardy*

The Fifth Amendment's Double Jeopardy Clause guarantees that

"[n]o person shall . . . be subject for the same offence to be twice put in jeopardy

of life or limb."  U.S. Const. amend. V.  In other words, "once a defendant is

placed in jeopardy for an offense, and jeopardy terminates with respect to that

offense, the defendant may neither be tried nor punished a second time for the

same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003).  The Supreme

Court thus often describes the Double Jeopardy Clause as prohibiting "successive

prosecutions," *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), or "multiple trials" for the

same offense, *McElrath v. Georgia*, 601 U.S. 87, 93-94 (2024) (internal quotation

marks omitted).

The Clause only applies, however, "if there has been some event,

such as an acquittal, which terminates the original jeopardy." *Richardson v.

United States*, 468 U.S. 317, 325 (1984).  For purposes of the Double Jeopardy

Clause, the Supreme Court distinguishes between convictions vacated for

insufficient evidence where the "government has failed to prove its case," which

are acquittals, and convictions vacated for trial error, which are not.  *See Burks*,

437 U.S. at 14-16; *see also Hoffler v. Bezio*, 726 F.3d 144, 160 (2d Cir. 2013) ("[W]here

jeopardy has attached and a defendant is convicted, retrial on the same charges is

not constitutionally barred where it results from a reversal of conviction based

on the defendant's own successful demonstration of *trial error* on appeal."

(emphasis in original)).

The reason for this distinction is that vacating a conviction for trial

error "implies nothing with respect to the guilt or innocence of the defendant"

and instead is simply "a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect." *Burks*, 437 U.S. at 15. Because it is in the defendant's interest to obtain a fair and error-free retrial, "[i]t has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside . . . because of some error in the proceedings leading to conviction." *Lockhart*, 488 U.S. at 38.

One type of trial error is caused by a change in the governing law after trial. *See United States v. Bruno*, 661 F.3d 733, 742 (2d Cir. 2011); *see also United States v. Harrington*, 997 F.3d 812, 817 (8th Cir. 2021) (explaining that when the evidence "offered at trial was sufficient to support the conviction under the law at the time but later was rendered insufficient by a post-conviction change in the law, the setting aside of a conviction on this basis is equivalent to a trial-error reversal rather than to a judgment of acquittal"). This kind of trial error occurs when the Supreme Court invalidates a legal theory that formed the basis for a conviction at trial. *See Bruno*, 661 F.3d at 736. In *Bruno*, for example, after a jury convicted the defendant of honest-services mail fraud based on his "failure to

disclose conflicts of interest arising from his receipt of substantial payments from individuals seeking to do business with" the State of New York, the Supreme Court invalidated the conflict-of-interest theory of honest-services wire fraud and held that the statute criminalizes only fraud based on bribes and kickbacks. *Id.* at 735-36.  This Court permitted a retrial, and in 2014, Bruno was retried and acquitted.

Here, the trial error was caused by a change in the governing law after trial.  Although the right-to-control theory of wire fraud had long been accepted in this Circuit, the government abandoned the theory before the Supreme Court.  *See Ciminelli*, 598 U.S. at 316.  The Supreme Court held that the wire fraud statute reaches only "traditional property interests" and that therefore the right-to-control theory of wire fraud was invalid.  *Id.* at 309.  Because the trial error was a result of a change in the law, the Double Jeopardy Clause is not a bar to a retrial.  *See, e.g.*, *Lockhart*, 488 U.S. at 38; *Bruno*, 661 F.3d at 742.

**B.** *Sufficiency Review*

The question then becomes whether we should conduct our own sufficiency review of the evidence based on a traditional property theory of wire fraud or whether we should simply remand for trial.

When a defendant challenges the sufficiency of the evidence for a conviction based on a trial error, this Court "generally requir[es] reviewing courts to consider preserved sufficiency challenges before ordering retrials based on identified trial error," at least "as a matter of prudent policy." *Hoffler*, 726 F.3d at 162. That general policy is justified by notice. For most trial errors, the government has notice of the elements of a crime it needs to prove at trial. *Bruno*, 661 F.3d at 742. That is not the case, however, where "those elements [are] . . . later altered by a change in the applicable law." *Id.* In *Bruno*, we considered whether sufficiency review "is appropriate where, as here, the error is due to an intervening change in the law." *Id.* Although we determined that the circumstances there justified evaluating the sufficiency of the evidence before remanding for trial, we "recognize[d] that in some cases there may be sound reasons for refusing to consider the sufficiency of the evidence when there has been a subsequent change in the law." *Id.* at 743; *see Hoffler*, 726 F.3d at 162 (characterizing *Bruno* as "stating that court[s] should review sufficiency challenge absent 'sound reason' for not doing so").

Other circuit courts have also declined to review the sufficiency of the evidence in these circumstances before remanding for further proceedings.

*See, e.g., United States v. Reynoso*, 38 F.4th 1083, 1088, 1090-91 (D.C. Cir. 2022) (holding that "sufficiency challenges are unavailable" for subsequent changes in governing law in a case where the Supreme Court, after the defendant's trial, held that a defendant's knowledge of his felon status was an element of the crime of gun possession by a felon); *United States v. Houston*, 792 F.3d 663, 669-70 (6th Cir. 2015) (declining to weigh the sufficiency of the evidence under the correct jury instructions, based on a post-trial change in the governing law, because to do so would force the court "to measure the evidence introduced by the government against a standard it did not know it had to satisfy and potentially prevent it from ever introducing evidence on that element"); *United States v. Weems*, 49 F.3d 528, 530-31 (9th Cir. 1995) (same; and noting that retrial "merely permits the government to prove its case in accordance with the recent change in law").

We conclude that this case fits comfortably within the exception contemplated by *Bruno*, as "sound reasons" exist for this Court to decline to review the sufficiency of the evidence. 661 F.4d at 743. In the operative indictment and at trial, the government presented only the now-invalid right-to-control theory of wire fraud, consistent with this Court's longstanding precedent

recognizing that theory.  *See, e.g., Finazzo*, 850 F.3d at 108.[2]  The government

indicates that it would offer new evidence to prove a property theory of fraud in

a trial on remand, such as "additional evidence regarding competitors that could

have submitted proposals to Fort Schuyler absent the defendants' bid-rigging,

including the quality and prices of services that those competitors would have

offered, as well as fact and/or expert testimony regarding harm to the victim

caused by the defendants' fraud."  Gov't Br. on Remand at 11.  Engaging in

sufficiency review at this stage would, therefore, "deny the government an

opportunity to present its evidence" under the correct legal standard.  *Bruno*, 661

F.3d at 743.[3]

---

[2]     Because the operative indictment relied only on the right-to-control theory, to
proceed to a second trial on a traditional property theory, the government would likely
have to obtain another superseding indictment.  The Supreme Court seemingly did not
foreclose the government from doing just this.  *Ciminelli*, 598 U.S. at 317-18 (Alito, *J.*,
concurring) ("I do not understand the Court's opinion to address fact-specific issues on
remedy outside the question presented, including . . . the [g]overnment's ability to retry
petitioner on the theory that he conspired to obtain, and did in fact obtain, by fraud, a
traditional form of property, viz., valuable contracts.").  Moreover, as the government
points out, this Court in *Bruno* contemplated that the government could change its
theory of liability on retrial through a superseding indictment in a change-in-law
situation.  661 F.3d at 740 ("It would be preferable and fairer, of course, for the
government to proceed on explicit rather than implicit charges, and as the government
intends to seek a superseding indictment, we dismiss the [i]ndictment, without
prejudice.").

[3]     For the first time in their joint reply brief on remand, Appellants argue that
controlling precedent, the Double Jeopardy Clause, and the Federal Rules of Criminal
Procedure *require* this Court to conduct a sufficiency review before remanding for a

The government's suggestion that, on remand, it will offer new evidence based on a traditional property theory of wire fraud distinguishes the outcome here from the outcome in *Bruno*. Because the government conceded in *Bruno* that it would not offer any new evidence on retrial, we engaged in sufficiency review before remanding. *See id.*

As a practical matter, it is unclear how this Court could or would evaluate the sufficiency of the evidence of the wire fraud count and wire fraud conspiracy convictions based on a wire fraud theory that the government did not present to the jury. Such fact finding surely "lay[s] within the province of the district court, as the finder of fact." *United States v. Cassiliano*, 137 F.3d 742, 747 (2d Cir. 1998) (making the observation in a different but similarly fact-intensive context). The Supreme Court took a similar view when the government

retrial. Although we generally do not consider *issues* raised for the first time on appeal in a reply brief, we will consider *arguments* raised *in response* to arguments made in an appellee's answering brief, as was the case here. *United States v. Bari*, 599 F.3d 176, 180 n.6 (2d Cir. 2010). But for the reasons outlined in this opinion, we have already determined that the prudential rule "generally requiring reviewing courts to consider preserved sufficiency challenges before ordering retrials based on identified trial error" does not apply here. *Hoffler*, 726 F.3d at 162. Moreover, to the extent Appellants argue that sufficiency review is constitutionally compelled by the Double Jeopardy Clause, that argument fails because Appellants have no valid double jeopardy claim regardless of the sufficiency of the evidence at their trials. *See Richardson*, 468 U.S. at 326. As we have explained in this opinion, the Double Jeopardy Clause is inapplicable where, as here, a conviction is set aside by an intervening change in the governing law, which, unlike an acquittal, does not terminate a defendant's original jeopardy.

requested that it affirm the Appellants' convictions on a traditional property theory of wire fraud after conceding that its right-to-control theory was erroneous. *See Ciminelli*, 598 U.S. at 316-17. It explained:

> With profuse citations to the records below, the [g]overnment asks us to cherry-pick facts presented to a jury charged on the right-to-control theory and apply them to the elements of a *different* wire fraud theory in the first instance. In other words, the [g]overnment asks us to assume not only the function of a court of first view, but also of a jury. That is not our role.

*Id.* (emphasis in original).

This case presents "sound reasons," *Bruno*, 661 F.3d at 743, for departing from this Court's "prudent" practice of reviewing the sufficiency of the evidence before remanding for retrial based on trial error, *Hoffler*, 726 F.3d at 162. We hold that, when trial error is caused by a subsequent change in the governing law, we may decline to review preserved sufficiency challenges if such a review "would deny the government an opportunity to present its evidence" under the correct legal standard. *Bruno*, 661 F.3d at 743.[4] Accordingly, we vacate

---

[4]     In their joint reply brief on remand, Appellants argue that *McDonnell v. United States* mandates that this Court review the sufficiency of the evidence. 579 U.S. 550 (2016). There, the Supreme Court interpreted the term "official act" in the federal bribery statute and, given its interpretation, concluded that the district court's jury instructions "lacked important qualifications, rendering them significantly overinclusive" and erroneous. *Id.* at 577. The Supreme Court directed the Fourth

Appellants' convictions for wire fraud and wire fraud conspiracy and remand for further proceedings in the district court without assessing the sufficiency of the evidence.

## II.    *Aiello's Honest-Services Wire Fraud Conspiracy Conviction*

In the first trial, the jury found Aiello guilty of conspiracy to commit honest-services wire fraud, as charged in Count Ten of the indictment, based on instructions about when a private person, rather than a government official, may be convicted of honest-services fraud.  We affirmed his conviction as to Count Ten because the jury instructions fit within this Court's decision in *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982).  On appeal, however, the Supreme Court concluded that the *Margiotta*-based jury instructions were erroneous and that it was "far from clear" that the erroneous instructions were harmless.  *Percoco*, 598 U.S. at 332.  The Supreme Court vacated Percoco's and Aiello's convictions for honest-services wire fraud conspiracy and remanded for further proceedings.  *See id.* at 333 (reversing judgment with respect to Percoco and remanding for

_____

Circuit to resolve, in the first instance, the defendant's argument that there was insufficient evidence that the defendant committed an "official act" based on the correct interpretation.  *Id.* at 580.  The Supreme Court did not, however, invalidate a long-established theory of liability under the statute as it did here, and the government there had notice that it needed to adduce evidence of an "official act" at trial.  Accordingly, *McDonnell* is inapposite.

further proceedings); *Aiello*, 143 S. Ct. at 2491 (vacating judgment with respect to Aiello and remanding for further proceedings).

Now, the government and Aiello jointly ask this Court to vacate Aiello's honest-services wire fraud conspiracy conviction because of the erroneous jury instructions and remand the case to the district court. The government represents that, on remand, it "does not intend to retry Aiello" for conspiracy to commit honest-services wire fraud and "anticipates moving to dismiss that count." Dkt. 525 at 1.

In light of the Supreme Court's decision in *Percoco*, we see no reason not to abide by the agreement between the government and Aiello -- especially when we vacated Percoco's conviction for conspiracy to commit honest-services wire fraud based on the same instructional error. *See United States v. Percoco*, 80 F.4th 393, 395 (2d Cir. 2023) (per curiam).

Accordingly, we vacate Aiello's honest-services wire fraud conspiracy conviction and remand for the government to move for dismissal of that count.

**III.    *Gerardi's False Statement Conviction***

Gerardi's challenge to his false statement conviction requires a discussion of the elements of the crime -- particularly materiality -- and the concept of prejudicial spillover.  We address both in turn.[5]

To the extent that Gerardi's argument about materiality is a challenge to the sufficiency of the evidence, we review such challenges *de novo*. *See United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009).

**A.    Materiality**

**1.    *Applicable Law***

It is a crime for any person to, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation."  18 U.S.C. § 1001(a)(2).  "Section 1001 was 'designed to protect the authorized functions of governmental departments and agencies from the perversion which might result from . . . deceptive

---

[5]    In our previous opinion, we concluded that the district court did not err by denying Gerardi's motion to dismiss his false statement conviction.  *Percoco I*, 13 F.4th at 178-80.

practices.'" *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015) (alteration in

original) (quoting *United States v. Shanks*, 608 F.2d 73, 75 (2d Cir. 1979)).

A conviction under section 1001(a)(2) requires a statement that is

both false and material.  *See* 18 U.S.C. § 1001(a)(2).  A false statement is material if

it has "a natural tendency to influence, or [be] capable of influencing, the decision

of the decisionmaking body to which it was addressed." *United States v. Gaudin*,

515 U.S. 506, 509 (1995) (alteration in original) (quoting *Kungys v. United States*,

485 U.S. 759, 770 (1988)).[6]

The decision at issue need not be a decision to prosecute; a decision

to investigate suffices.  *See Jabar*, 19 F.4th at 84 ("The jury could reasonably

conclude that [the defendants'] explanation for whether they properly used the

grant was 'capable of influencing' the investigation, which is all that was

required." (quoting *Adekanbki*, 675 F.3d at 182)).  Still, "evidence of such a

decision cannot be purely theoretical and evidence of such a capability to

influence must exceed mere metaphysical possibility." *Litvak*, 808 F.3d at 172-73.

Moreover, the decision to prosecute or investigate must be for a crime other than

---

[6]    We have also described a false statement as material if it "is capable of distracting
government investigators' attention away from a critical matter." *United States v. Jabar*,
19 F.4th 66, 84 (2d Cir. 2021) (quoting *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir.
2012)).

making a false statement, or "the materiality element would be rendered

meaningless." *Id.* at 173.

### 2. *Application*

Gerardi argues that the trial evidence cannot sustain his conviction

because *Ciminelli* renders his false statement immaterial as a matter of law; that

is, even if he made a false statement, that statement could not have been material

because the conduct under investigation did not constitute fraud after *Ciminelli*.

The Supreme Court's decision in *Ciminelli*, however, does not affect the

materiality analysis at issue in his false statement conviction.

A jury found Gerardi guilty of making false statements to federal

officers when he denied his involvement in tailoring the Syracuse RFP for the

benefit of his company, COR Development. Gerardi made the statements in a

proffer session with the government during its investigation into the rigging of

the RFPs for Buffalo and Syracuse. Gerardi's false statements were, therefore,

capable of influencing a decision-making body -- the Department of Justice, via

its prosecutors and special agents in a proffer session -- as it determined who to

investigate for wire fraud and wire fraud conspiracy. *See Adekanbi*, 675 F.3d at

183 (concluding that the defendant made material false statements in a safety-

valve proffer session when he falsely identified himself to the government, which "has *both* a 'natural tendency to influence' and is 'capable of distracting' those officials," as "there is little doubt that providing a false identity can result in a significant hindrance to law enforcement's investigation or prosecution of crimes" (emphasis in original) (quoting *Gaudin*, 515 U.S. at 509)); *Jabar*, 19 F.4th at 84 (concluding false statements were material where the defendants' "explanation for whether they properly used the grant was 'capable of influencing' the investigation" even where the defendants claimed the agent already knew the answers to their questions (quoting *Adekanbi*, 675 F.3d at 182)). Accordingly, his false statements were material.

## B.    Prejudicial Spillover

### 1.    *Applicable Law*

"When an appellate court reverses some but not all counts of a multicount conviction, the court must determine if prejudicial spillover from evidence introduced in support of the reversed count requires the remaining convictions to be upset."  *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994). This Court considers three factors to determine whether prejudicial spillover exists:

(1) whether the evidence introduced in support of the vacated count 'was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts,' (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong.

*United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003) (quoting *United States v. Vebeliunas*, 76 F.3d 1283, 1294 (2d Cir. 1996)).

Where "the evidence that the government presented on the reversed counts was, as a general matter, no more inflammatory than the evidence that it presented on the remaining counts," spillover prejudice is not likely to exist. *United States v. Morales*, 185 F.3d 74, 83 (2d Cir. 1999) (concluding that no prejudicial spillover existed where "all of the evidence related to violent armed robberies"); *see also United States v. Friedman*, 854 F.2d 535, 582 (2d Cir. 1988) (concluding that prejudicial spillover did not exist where the government's subsequently invalid theory of mail fraud was not inflammatory).

Likewise, where "the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both," spillover prejudice will likely not be found. *United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995); *see also Hamilton*, 334 F.3d at 182 ("[P]rejudicial

spillover is unlikely if the dismissed count and the remaining counts were . . .

quite similar . . . .").  In contrast, this Court has cautioned that spillover prejudice

is "highly likely" from a vacated Racketeering Influenced and Corrupt

Organizations ("RICO") count as to a single Hobbs Act robbery charge because

"[a] RICO charge allows the government to introduce evidence of criminal

activities in which a defendant did not participate to prove the enterprise

element," *United States v. Tellier*, 83 F.3d 578, 582 (2d Cir. 1996), although the fact

that a "RICO count . . . was subsequently dismissed does not alone suffice to

establish prejudice," *Vebeliunas*, 76 F.3d at 1294.  And, of course, a finding of

spillover prejudice is not likely where the government's evidence on the

remaining counts is strong.  *See Wapnick*, 60 F.3d at 954.

Ultimately, "[a] defendant bears an extremely heavy burden when

claiming prejudicial spillover."  *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir.

2002).  "It is only in those cases in which evidence is introduced on the

invalidated count that would otherwise be inadmissible on the remaining counts,

*and* this evidence is presented in such a manner that tends to indicate that the

jury probably utilized this evidence in reaching a verdict on the remaining

counts, that spillover prejudice is likely to occur." *Rooney*, 37 F.3d at 856

(emphasis in original).

## 2. *Application*

Gerardi contends that the wire fraud counts tainted his false

statement count, creating spillover prejudice and requiring vacatur or at least a

new trial for his false statement count.[7]

The first factor -- the purported inflammatory nature of the evidence

on the reversed or vacated counts -- does not suggest spillover prejudice. The

evidence on the wire fraud counts was no more inflammatory than the evidence

on the false statement count, as it all related to the Buffalo Billion bid-rigging

scheme. *See Morales*, 185 F.3d at 83. Gerardi claims that the inflammatory nature

of the evidence arises from "lump[ing] all Defendants together -- even though

Gerardi was not involved in the Buffalo RFP -- and . . . disparag[ing] them as

fraudsters and liars who took advantage of a non-profit organization."

Appellants' Joint Br. on Remand at 38. But Gerardi's involvement in the Syracuse

RFP was part of the broader conspiracy to rig the bidding process for Buffalo

---

[7]     This Court did not reach Gerardi's challenge regarding prejudicial spillover in its previous opinion. Because we did not overturn the wire fraud convictions, the issue of spillover prejudice was not presented. *Percoco I*, 13 F.4th at 178 n.13.

Billion initiative projects. To prove that Gerardi made a false statement and that it was material, the government had to introduce evidence about the broader conspiracy, including the Buffalo RFP. Accordingly, Gerardi's argument fails to establish the inflammatory nature of the evidence on the vacated counts as opposed to the evidence on the remaining count -- all of which involved the Buffalo Billion bid-rigging scheme.

Likewise, because the wire fraud and false statement counts arise from similar facts about the Buffalo Billion bid-rigging scheme, evidence about the overall scheme and Gerardi's role in it "would have been admissible as to both" counts. *Wapnick*, 60 F.3d at 954. The second factor -- the similarity between the dismissed count and remaining counts -- therefore weighs against a finding of spillover prejudice.

Finally, the third factor -- the strength of the government's evidence on the false statement count -- also weighs against a finding of spillover prejudice. Gerardi made a handwritten comment on a draft of the Syracuse RFP that the inclusion of COR Development's software as a qualification was "too telegraphed." App. at 1328. Gerardi told federal officers that he really meant that the language used was "too telescoped" and would not be broad enough to

permit other companies to apply and compete. *Id.* Gerardi also told federal

officers that, while he suggested removing a requirement for audited financials

from the Syracuse RFP, he did so not to help COR Development, which did not

have audited financials. He did so, instead, to remove a barrier that might

prevent other companies from bidding. And Gerardi told officers that he could

not explain why Howe emailed him to confirm that Kaloyeros made that

adjustment to the RFP, and that he responded merely to be polite. This evidence

strongly supports his conviction for making false statements to federal officers as

he denied his involvement in tailoring the Syracuse RFP for the benefit of his

company when there was ample evidence of his involvement for that purpose.

Accordingly, the strength of the government's evidence also weighs against a

finding of spillover prejudice.

Ultimately, "[a] defendant bears an extremely heavy burden when

claiming prejudicial spillover," *Griffith*, 284 F.3d at 351, and Gerardi has not met

that burden here. Hence, Gerardi's prejudicial spillover claim fails.

### *CONCLUSION*

For the foregoing reasons, we vacate Appellants' convictions for

wire fraud and wire fraud conspiracy, we vacate Aiello's conviction for

conspiracy to commit honest-services wire fraud and remand for the government

to move for dismissal of that count, we affirm Gerardi's false statement

conviction, and we remand for further proceedings.